## VAN AGTHOVEN, ADMR., *v.* THE ZUMSTEIN TAXICAB COMPANY.

*Negligence—Evidence—Automobile speed a mile from collision admissible—Impeachment of witness—Statements of automobile passengers to witnesses after accident.*

1. In an action for wrongful death resulting from a collision between the automobile of plaintiff's decedent and that of defendant, where there is a conflict in the testimony as to the speed of decedent's automobile at the point of the accident, the admission of testimony of the speed of the car when a mile distant from the scene of the accident is not erroneous, as it is not so remote as not to have a bearing on the manner in which · decedent's car was being operated.

2. In such an action the admission of testimony of five witnesses as to what the passenger in decedent's car said to them shortly after the accident is proper for the purpose of impeachment, the proper grounds for such impeachment having been laid.

(Decided May 28, 1923.)

ERROR: Court of Appeals for Hamilton county.

*Mr. Robert S. Alcorn* and *Mr. John Thorndyke,* for plaintiff in error.

*Messrs. Freiberg & Geoghegan; Mr. J. Paul Geoghegan* and *Messrs. Galvin & Galvin,* for defendant in error.

CUSHING, J.   What was the cause of a collision between the Stutz automobile driven by plaintiff's decedent, and a Packard automobile, owned by the defendant?

About nine-thirty p. m., September 2, 1917, Roland Van Agthoven was driving a Stutz Roadster

west on Kellog avenue. At a point estimated to be five squares west of the Little Miami river, that car collided with a Packard car, owned by the defendant, and operated by Frank Boetger, one of its employes. The Van Agthoven car was precipitated down a bank twenty feet, on the south side of the avenue, and when it stopped was headed east. Van Agthoven was killed.

The petition charges that one of the defendant's automobiles, a big, heavy car was being driven eastwardly on Kellog avenue at a high, reckless, careless and negligent rate of speed, causing such automobile to run into and collide with the automobile of plaintiff's decedent, striking its left front wheel, to this plaintiff's damage in the sum of $25,000.

The defendant admitted the collision, and denied negligence and all other allegations of the petition.

For a second defense, defendant pleaded sole negligence on the part of plaintiff's decedent, specifying that Van Agthoven was driving his automobile on the wrong side of the highway, at a high and unlawful rate of speed; that he was attempting to pass an automobile going west on Kellog avenue; that in so doing, he was driving his automobile at an excessive rate of speed; that he did not keep a proper lookout for approaching vehicles; that he did not sound any warning of his approach, and ran into the automobile of the defendant, striking its left rear wheel; and that but for such negligence the accident would not have happened.

The reply denied negligence on the part of plaintiff's decedent.

The question as to who was negligent was submitted to the jury. It returned a verdict for the defendant, and this action is prosecuted to reverse the judgment entered on that verdict.

Plaintiff in error assigns numerous grounds of error for which he claims the judgment should be reversed. However, but two of the assignments of error were argued orally and in the brief. They are: The admission of evidence, offered by the defendant and objected to by the plaintiff; and the misconduct of counsel for defendant.

The evidence of which complaint is made might properly be grouped into two classes: (1) The evidence offered as to the speed of the Stutz Roadster when it was about a mile from the place of the accident. (2) The evidence of five witnesses as to what Ethel Yeager, the passenger in the Stutz Roadster, said to them a few minutes after the accident.

There were three automobiles in close proximity, immediately preceding the accident. They will be referred to as the Van Agthoven, the Fletcher and the Zumstein cars. The Fletcher and the Van Agthoven cars were proceeding west. The Zumstein car was going east.

There was evidence that the Fletcher car, at the point in question, was traveling at fifty miles an hour; that the Van Agthoven car was immediately back of it, and that the driver was blowing his horn. The Zumstein car, traveling east, was going at the rate of twenty-five miles an hour. The Fletcher and the Zumstein cars passed, and almost immediately thereafter the accident happened.

It is undisputed that the left front wheel of

the Van Agthoven car collided with the rear left wheel of the Zumstein car. There is no material dispute about this fact.

The testimony of Mrs. Yeager was that as soon as the Zumstein car passed the Fletcher car, it swerved, or turned to the left and north, thus causing the collision. It is difficult to see how this testimony properly stated the facts, in view of the physical evidence. Had the Zumstein car turned north, and the Stutz proceeded in a westwardly course, the collision would have occurred between the front part of the Zumstein car and some portion of the Van Agthoven car, but, as pointed out, the front wheel of the Van Agthoven car collided with the rear wheel of the Zumstein car. The conclusion follows that the Van Agthoven car turned south, while the Zumstein car must have proceeded east.

As a fourth car appears in the record, it will be referred to as the Wolfram car. That car was being driven westwardly on Kellog avenue. When it reached a point at or just west of the waterworks, the Van Agthoven car passed it. From that point to the bridge over the Little Miami river the highway is narrow and winding. Before reaching the bridge over the river there is a sharp turn to the west.

Plaintiff in error complains of the admission of testimony of the passengers in the Wolfram car to the effect that the Van Agthoven car was traveling at from fifty to sixty miles an hour when it passed them at or near the waterworks, a mile distant from the scene of the accident, contending that the speed at that point could not have any bearing on its speed after it had crossed the bridge,

particularly in view of the sharp turn in the road before reaching the river bridge. The testimony of the passengers in the Wolfram car was to the effect that their car was proceeding at between twenty-five and thirty miles an hour, and that the Van Agthoven car, in their judgment, was traveling at twice the speed of their car. This testimony could not have been prejudicial.

The testimony of the speed of the Van Agthoven car at the point of the accident was conflicting. Mrs. Yeager testified that it was going about thirteen or fourteen miles an hour. The testimony of the chauffeur of the Fletcher car was that he was going fifty miles an hour, and that Van Agthoven was keeping up with him, constantly blowing his horn. In view of this situation, the testimony of the speed of the Van Agthoven car when it passed the Fletcher car was not so remote as not to have a bearing on the manner in which the Van Agthoven car was being operated, and it might have some bearing on the speed of the Van Agthoven car at the time of the accident, particularly in view of the testimony of Mrs. Yeager.

In *Grand* v. *Kasinger*, 28 Cal. App., 530 (153 Pacific, 243), it was held that the admission of testimony of the speed of an automobile at a place four or five blocks distant from the place of the accident was the exercise of a reasonable discretion vested in the court.

In *Davies* v. *Barnes*, 201 Ala., 120, 77 So., 612, it was held that the speed of an automobile some distance from the scene of the accident afforded an inference of fact as to its subsequent speed, and that its admission rested in the sound discretion

of the trial court, depending on the facts in each case.

In *La Duke* v. *Dexter* (Mo.), 202 S. W., 254, it was held that the speed of an automobile passing a schoolhouse some distance from the point of the collision was admissible.

In *Prince* v. *State*, 12 Ohio App., 347, the first paragraph of the syllabus is:

"Evidence tending to prove that the accused was driving his automobile at a high rate of speed a short distance from the scene of the accident is competent."

Another assignment of error argued was the admission of testimony of the passengers in the Wolfram car as to what Mrs. Yeager said to them after the accident, and after they had taken her into their car. This testimony was proper for the purpose of impeachment. Counsel for defendant carefully laid the foundation to impeach Mrs. Yeager's testimony. She had testified that the Van Agthoven car was traveling at the rate of thirteen or fourteen miles an hour, and that the Zumstein car turned to the left and north immediately after passing the Fletcher car. Counsel then interrogated Mrs. Yeager as follows:

"Q. And you talked to them didn't you and told them how it happened? A. No sir.

"Q. Never said a word to them? A. No sir. I only asked for water, that is all.

"Q. Didn't you say to them, the people that took you in that car, that you had told Roland not to drive so fast? A. No sir.

"Q. And that Roland was trying to make Mr. Fletcher take his dust? A. No sir, I never mentioned nothing like that.

"Q. You don't want to say that you didn't say that, do you? A. Yes, sir.

"Q. Or do you want to say that you don't remember that you said it? A. I didn't say it.

"Q. You didn't say it? A. I did not.

"Q. You are absolutely positive? A. I am positive, yes sir.

"Q. About that? A. Yes sir."

While some authorities go to the extent of holding that testimony of a witness as to what was said or done immediately after the accident may be offered as a part of the *res gestae*, it is clear from the record that this was not the purpose of offering the testimony of the passengers of the Wolfram car. They testified that Mrs. Yeager had told them she had cautioned Van Agthoven not to drive so fast, and the admission of the testimony for impeachment purposes was not erroneous.

The only other question for consideration is the claim that counsel for defendant was guilty of misconduct.

The charge of misconduct of counsel has been before us many times. We find no acts of counsel or statements in the record that would justify a conclusion of misconduct. (See *Palmer* v. *Peak*, 104 Ohio St., 603.)

*Judgment affirmed.*

BUCHWALTER and HAMILTON, JJ., concur.